UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER HAYES, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Civil Action No. 21-362 (JEB) |

**MEMORANDUM OPINION**

In 2010, Plaintiff Peter Hayes, an enlisted member of the Army, injured himself in a motorcycle accident in South Carolina while off duty. Years later, he submitted a claim for insurance benefits under the Servicemembers' Group Life Insurance Traumatic Injury Protection Program (referred to as TSGLI). As a covered member, Hayes is entitled to some level of TSGLI benefits if traumatic injuries rendered him unable to independently perform at least two enumerated "activities of daily living," such as bathing or dressing, for at least 30 consecutive days. After a litany of applications, requests for reconsideration, and administrative appeals, the U.S. Army Board for the Correction of Military Records ultimately approved an award of $50,000, but denied Plaintiff an additional $25,000 because he had not shown that his loss of independence continued for an additional 30 days (for a total of 60 consecutive days). Now, twelve years after the accident, Hayes is in federal court still pursuing the additional $25,000 he believes he is owed, and he and Defendant United States have cross-moved for summary judgment. Because the Board applied the correct evidentiary standard and its determination was not arbitrary or capricious, the Court will grant the Government's Motion.

1

I.      **Background**

Before delving into the facts and procedural history of this case, the Court will provide a brief overview of the relevant regulatory backdrop. In 2005, Congress created the TSGLI Program to provide monetary assistance to servicemembers who suffer traumatic injuries. See Pub. L. No. 109-13, § 1032(a)(2), 119 Stat. 231 (2005); accord Sorkness v. United States, No. 17-2248, 2019 WL 4451990, at *1 (D.D.C. Sept. 17, 2019). Under the Program, servicemembers are "automatically . . . insured for traumatic injur[ies]," and a member who suffers a "qualifying loss" is entitled to payments ranging from $25,000 to $100,000 depending on "the severity of the qualifying loss." 38 U.S.C. § 1980A(a), (d). The statute and implementing regulations, in turn, define qualifying losses as including a traumatic injury resulting in the inability of the servicemember to perform at least two activities of daily living (ADLs) for at least 30 consecutive days. Id. § 1980A(b); see 38 C.F.R. § 9.20. The loss of such ADLs for 30 days entitles a claimant to an award of $25,000. See 38 C.F.R. § 9.20(f)(20). Relevant here, if the servicemember's inability to perform at least two ADLs extends to 60 consecutive days, the size of the award increases by $25,000. Id. Finally, if the loss of function is due to a traumatic brain injury, claimants can recover an additional $25,000.

On the evening of September 10, 2010, Hayes crashed his motorcycle in South Carolina while not wearing a helmet. See ECF No. 25 (Sealed Joint Appendix) at 51. According to the hospital records, "Alcohol was involved." Id. At the time of the accident, Plaintiff was an active-duty soldier in the U.S. Army and eligible for TSGLI benefits, even though he was not performing a military function that night. Id. at 926; see ECF No. 20-1 (Def. Cross-Motion) at 5; ECF No. 20-2 (TSGLI, A Procedural Guide) Part 1, at 5 ("TSGLI provides for payment to Servicemembers who are severely injured (on or off duty) as the result of a traumatic event and

suffer a loss that qualifies for payment under TSGLI."). Plaintiff was admitted to the hospital, where he was diagnosed with several injuries, including fractures in his right wrist and skull. See Sealed JA at 51–52. Three days later, he had surgery on his wrist. Id. at 38, 56–58. The next day — September 14, just four days after the accident — Hayes was discharged from the hospital. Id. at 49–50. At the time of his discharge, Plaintiff was "up walking around," and he was "alert and oriented" with "no focal neurologic deficits." Id. at 49. In the ensuing months, he attended various medical and therapy appointments as his recovery proceeded. The Court will not detail that recovery at length here, choosing to provide the relevant details as necessary to the legal analysis below.

Fast forward several years to February 2014, when Plaintiff first applied for TSGLI benefits. Id. at 1–5, 14–15. His application consisted of a completed form and a statement from Terri Burns, a registered nurse who did not observe Hayes's recovery immediately after the accident but instead "reviewed the patient's medical records." Id. at 6–13. In this filing, Hayes sought $50,000. Id. at 15. The claim was partially approved, and he was awarded $25,000 for the loss of the ability to bathe and dress for at least 30 consecutive days after the accident due to non-brain-related traumatic injuries. Id. at 882, 884. But Plaintiff's claim for the loss of multiple ADLs for at least 60 days, and the accompanying additional award, was denied. Id.

Hayes then appealed the partial denial of his claim. Id. at 884–924. In that appeal, he requested an additional payment of $25,000 for his loss of ADLs lasting 60 days, as well as another $25,000 (for a total of $75,000) on the ground that his impairments were in fact related to a traumatic brain injury. Id. at 886. The TSGLI office denied additional relief, finding insufficient evidence that Plaintiff was unable to perform at least two ADLs for 60 consecutive days and that his limitations were due to a traumatic brain injury. Id. at 925–30. Undeterred,

3

Hayes asked the Army to reconsider his claim and then again supplemented his request. Id. at 935–51. This time around, the TSGLI Certifying Official awarded an additional $25,000 because Plaintiff had now demonstrated that his loss of functions for 30 days was in fact caused by a traumatic brain injury. Id. at 1783–85. Hayes was once again denied the final $25,000, however, because the records did not establish that his loss of ADLs extended to 60 days. Id.

Having been awarded $50,000 but still seeking the additional $25,000, Plaintiff submitted a third application for benefits. Once again, his request was denied. Id. at 2664. In late 2015 — now five years removed from the accident — Hayes submitted one more appeal. The TSGLI Appeals Review Panel unanimously voted to recommend denial of the appeal, and the Adjutant General, U.S. Army Human Resources Command, notified Plaintiff of this decision. The Adjutant General explained in a detailed letter that because "the medical record indicates he had only loss of bathing at Day 56 and was independent for basic activities of daily living by Day 61," Plaintiff did not satisfy the requirements for an additional payment. Id. at 4026–32.

Finally, Hayes applied to the U.S. Army Board for the Correction of Military Records, alleging that the supporting records demonstrated that he had required assistance to carry out multiple ADLs beyond the 60-day mark. Id. at 4146. The Board's medical advisor reviewed the relevant records and found that there was no documentation supporting such a claim. Id. at 6061. The Board thus denied relief. Id. In 2021, Hayes filed this lawsuit, in which the parties have now cross-moved for summary judgment.

## II.     Legal Standard

Plaintiff invokes the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, to challenge the Board's decision. Summary judgment is one appropriate mechanism for adjudicating claims under the APA. See, e.g., Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52

(D.D.C. 2010). "Due to the limited role federal courts play in reviewing administrative decisions, however, the typical Federal Rule 56 summary-judgment standard does not apply in such cases." Ey v. McHugh, 21 F. Supp. 3d 49, 54 (D.D.C. 2014) (citing Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89–90 (D.D.C. 2006)). Rather, in these cases, "the function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did." Id. (citations omitted). Summary judgment therefore serves as the mechanism for deciding whether, as a matter of law, an agency action is supported by the administrative record and otherwise consistent with the APA standard of review. See Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this "narrow" standard of review — which encourages courts to defer to the agency's expertise, see Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) — an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id. (internal quotation marks omitted). Courts, in turn, will find an agency action to be "arbitrary and capricious" only "if the agency . . . relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency[ ] or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Id.

5

It is not enough, then, that the court would have come to a different conclusion from the agency. See Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003). The reviewing court is "not to substitute [its] judgment for that of the agency," id., nor "disturb the decision of an agency that has examine[d] the relevant data and articulate[d] . . . a rational connection between the facts found and the choice made." Americans for Safe Access v. DEA, 706 F.3d 438, 449 (D.C. Cir. 2013) (citation and internal quotation marks omitted). A decision that is not fully explained may be upheld "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

Deference is doubly warranted, moreover, when the court reviews administrative decisions made by the armed forces. The D.C. Circuit reviews decisions by military review boards for the correction of military records under "an unusually deferential application of the 'arbitrary and capricious' standard." Piersall v. Winter, 435 F.3d 319, 324 (D.C. Cir. 2006) (citing Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (Kreis I)). This, of course, does not mean that federal courts may not review Board decisions. Indeed, to affirm an Army ruling, "[t]he court . . . must be able to conclude that the Board 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005) (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43). At the end of the day, however, the Court need determine only "whether the Secretary's decision making process was deficient, not whether his decision was correct." Kreis I, 866 F.2d at 1511.

**III.  Analysis**

In cross-moving for summary judgment, the parties diverge on two main issues. First, they debate whether the Board applied the correct evidentiary standard. Second, they disagree

6

about whether it reasonably determined that Hayes did not provide sufficient evidence that his loss of ADLs continued for at least 60 days.  The Court considers these two issues in turn.

### A.  Evidentiary Standard

First up is whether the Board reviewed Plaintiff's application under the correct evidentiary standard.  More specifically, Hayes contends that the Board was required to apply the "benefit-of-the-doubt" rule set forth in 38 U.S.C. § 5107, which generally governs determinations made by the Secretary of Veterans Affairs.  That statute states:

> The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary.  When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.

Id. § 5107(b); see ECF No. 18-1 (Pl. MSJ) at 16.  Here, the parties seem to agree that the Board in fact applied a preponderance-of-the-evidence standard.  See Pl. MSJ at 16; Def. Cross-Motion at 12.  In the Government's view, however, doing so was proper.  For three independent reasons, the Court concurs.

For starters, the Court is not persuaded that the benefit-of-the-doubt rule ever applies to TSGLI cases involving review by the Board, which is part of the Army.  On this point, the Court is guided by the thoughtful opinion of Judge Randolph Moss of this district, who recently rejected a nearly identical argument made by a TSGLI claimant.  Sorkness, 2019 WL 4451990, at *4–6.  In Sorkness, Judge Moss explained that the claimant's argument in favor of applying the benefit-of-the-doubt standard "ignores both the plain language of the 'benefit of the doubt' statute, and the regulations promulgated by the Department of Veterans Affairs."  Id. at 4 (quoting 38 U.S.C. § 5107(b)).  Indeed, while 38 U.S.C. § 5107 "governs the Secretary of Veterans Affairs' consideration of 'lay and medical evidence,'" it simply "does not apply to [a]

determination, such as that at issue here, made by the Army or the Department of Defense." Id. (quoting 38 U.S.C. § 5107(b)). On the contrary, the Department of Veterans Affairs expressly considered and rejected employing the benefit-of-the-doubt standard under such circumstances "when it adopted regulations implementing the TSGLI program." Id. In adopting those regulations, the agency reasoned that "[d]ecisions about entitlement to TSGLI, unlike decisions regarding entitlement to VA compensation and pension, are made by each uniformed service. It would therefore be inappropriate for VA to promulgate a benefit-of-the-doubt rule in this rulemaking to be applied . . . in making decisions about TSGLI." Traumatic Injury Protection Rider to Servicemembers' Group Life Insurance, 72 Fed. Reg. 10,362, 10,363 (Mar. 8, 2007) (citation omitted); see Sorkness, 2019 WL 4451990, at *4. This Court concurs with the reasoning in Sorkness, which Plaintiff provides no reason to depart from.

Perhaps recognizing the weakness of his position, Hayes entirely drops the issue in his Opposition, making no mention of the benefit-of-the-doubt evidentiary standard. See ECF No. 22 (Pl. Opp.) at 2–7. By "not addressing the issue in his [Opposition], the Court may treat Plaintiff as conceding any objection to" the standard applied by the Board. See Harrington v. Food & Drug Admin., No. 20-1895, 2022 WL 179330, at *3 (D.D.C. Jan. 20, 2022); see also Nat'l Sec. Couns. v. CIA, 898 F. Supp. 2d 233, 268 (D.D.C. 2012), aff'd, 969 F.3d 406 (D.C. Cir. 2020) ("[T]he Court may treat the plaintiff's failure to oppose the defendant's 12(b)(6) arguments as a decision to concede those arguments."); Shankar v. ACS-GSI, 258 Fed. Appx. 344, 345 (D.C. Cir. 2007) (plaintiff conceded merits of issue when he "did not respond in any way to defendant's argument"). "Put another way, by not objecting to" the Government's arguments about the evidentiary standard, Plaintiff "has forfeited" the issue. Harrington, 2022 WL 179330, at *3.

8

In any event, even assuming that the Board may apply the standard set forth in 38 U.S.C. § 5107(b) in at least some TSGLI cases <u>and</u> that Plaintiff has not conceded the issue here, the Board nonetheless acted appropriately in deciding not to apply the standard under the current circumstances. That is because Section 5107(b) instructs that the claimant shall receive "the benefit of the doubt" only after it has been established that "there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter." <u>Id.</u> In other words, "the benefit of the doubt rule is inapplicable when the preponderance of the evidence is found to be against the claimant." <u>Ortiz v. Principi</u>, 274 F.3d 1361, 1364 (Fed. Cir. 2001). Such is the case here. As demonstrated below, the record permitted the Board to reasonably determine that there was no such equipoise of evidence, and there was thus no need to afford Hayes the benefit of the doubt even if Section 5107(b) applied.

B. <u>Merits</u>

With the table set, the Court is ready for the main course. While the parties at times talk past each other and muddy the waters on this issue, the essential merits question for the Court is straightforward: did the Board reasonably determine that Plaintiff had not demonstrated his inability to independently perform two ADLs for 60 consecutive days? Applying the deferential standard of review set out above, the Court concludes that the Board's determination was not arbitrary and capricious. The agency thus permissibly declined to increase Hayes's total award from $50,000 — which itself is nothing to sneeze at — to $75,000.

To be clear, the only determination now at issue is whether Plaintiff's inability to perform "the ADLs of bathing, toileting, and dressing" extended to the 60-day mark. <u>See</u> Sealed JA at 4146. TSGLI rules establish that "[a] member is considered to have a loss of ADL if the member **REQUIRES assistance** to perform at least two of the six activities of daily living."

9

TSGLI, A Procedural Guide, Appendix A, at 18.  Important here, "[i]f the patient is able to perform the activity by using accommodating equipment (such as a cane, walker, commode, etc.) or adaptive behavior, the patient is considered able to independently perform the activity." Id. Applying those standards, the Board's determination that Hayes had not demonstrated that he required assistance to perform multiple ADLs for 60 days was not arbitrary and capricious.  This is so because the Board's decision was supported by the evidence and there was a rational connection between the facts in the record and its ultimate conclusion.

In reaching its decision, the Board relied on medical records, notes from Plaintiff's therapy providers, and earlier administrative findings.  The notes from Hayes's occupational and physical therapy, for instance, demonstrate that while his activities were limited in September and into October 2010, by October 25 — still well short of the 60-day threshold — he had progressed significantly to the point that he only "occasionally" lost his balance.  See ECF No. 29 (Supplemental Sealed JA) at 4405.  Then, critically, on November 1 — 53 days after the motorcycle accident — Plaintiff's medical records indicated that he "was modified independent with bathing and dressing as well as transfers on all surfaces." Sealed JA at 6058 (citations omitted); see also Suppl. Sealed JA at 4654.  Similarly, Hayes's occupational therapy notes from November 4 (still shy of 60 days) indicate that he was able to perform the relevant ADLs, including bathing and dressing, albeit with modifications.  See Sealed JA at 6058; see Suppl. Sealed JA at 4653–54.  Consistent with this finding, the occupational therapist noted on November 9 (day 61) that Plaintiff was independent for all relevant ADLs relating to self-care, and that he was able to transfer on all surfaces.  See Suppl. Sealed JA at 4652; Sealed JA at 6058.

The medical records from this time period also acknowledge that while leaving home was "taxing" for Hayes, he was independent for in-home transfers and could "ambulate without [a] cane in home and outside with [a] cane [and standby assistance]." Suppl. Sealed JA at 4667–68. Lest there be any doubt about Plaintiff's conditions in the period past 60 days, a detailed physical therapy assessment from November 11 (day 63) recorded that his incisions were healed, he was independent for all transfers, and he was able to "ambulate without device in home and outside 150 [feet] and steps," which demonstrated that his "[b]alance [wa]s good." Suppl. Sealed JA at 4665; Sealed JA at 6058. In short, the medical records and therapy notes created contemporaneously with Hayes's recovery provide ample support for the Board's ultimate conclusion that he "failed to provide sufficient medical documentation to support his claim that he could not, independently, perform two or more ADL for 60 or more days." Sealed JA at 6061.

The Board, moreover, made note of all of the above evidence and reasonably relied on it in making its determination. Before its discussion of Hayes's case, the Board extensively noted the various medical records setting forth his condition. Id. at 6055–58. It also confirmed that it had reviewed the earlier administrative decisions, including the TSGLI Special Compensation Branch's denial of Plaintiff's claim and the Adjutant General's letter. Id. Specifically, the Board highlighted the following relevant portion of that letter:

> Why The Claim Was Not Approved: . . . The November 4, 2010 Physical Therapy Note (Day 56 after the traumatic event) documents [that Hayes] was independent in home transfers and ambulated with a cane in home for 140 feet. It notes he needed stand-by assistance for shower transfers and negotiating steps with rails. The Occupational Therapy Note from that same date documents he was modified independent with dressing and bathing. It notes he was independent for transfers and mobility on all surfaces. Stand-by assistance for shower transfers would qualify as loss of one activity of daily living (bathing), but negotiating steps is

11

> not a program standard for payment. The guidelines for transfers is requiring assistance to move into or out of a bed or chair. The November 9, 2010 Physical Therapy Note (Day 61 after the traumatic event) documents he was independent with home transfers and needed stand-by assistance for steps with rails. The November 9, 2010 Occupational Therapy Note documents he was independent for activities of daily living and for transfers and mobility on all surfaces.

Id. at 4140–41; see id. at 6058.

In light of that evidence, the Adjutant General unequivocally concluded, "Since the medical record indicates he had only loss of bathing at Day 56 and was independent for basic activities of daily living by Day 61, the claim of traumatic brain injury related loss of activities of daily living does not qualify for payment for the 60 day milestone." Id. at 4141, 6060. While the Board itself could certainly have given a more detailed explanation of its ultimate ruling in the discussion section of its own decision, id. at 6061, the Court has no basis to disrupt the agency's decision as long as its "path may reasonably be discerned." Bowman Transp., Inc., 419 U.S. at 286. In light of the robust medical documentation that the Board reviewed and relied on in reaching a determination, that low bar is satisfied here.

Plaintiff's arguments to the contrary do not pass muster. Aside from taking issue with the evidentiary standard, he primarily contends that the Board ignored first-hand witness statements. See Pl. MSJ at 19. Not so. For instance, Hayes makes much of the testimony of Burns — the nurse who reviewed his medical records in 2014 but did not treat him — as well as that of Becky Green (Hayes), his fiancée at the time of the accident. Id. at 17–20. In Plaintiff's view, those witnesses' statements demonstrate that he remained unable to complete multiple ADLs into mid-November 2010, past the 60-day marker. Id. Without wading into the weeds of their respective statements, the Court notes that the Board expressly considered their testimony, as well as Plaintiff's view that the "[t]he weight of the evidence that includes the reports from [Burns], as

well as the witness statements by the applicant and [Hayes,] . . . demonstrate that assistance was required for the ADLs of bathing, toileting, and dressing beyond 60 days" before rendering its decision. See Sealed JA at 6053.

Although the Board went on to assign more weight to the medical notes created at the time of Plaintiff's treatment than to the statements of Burns and Hayes, that decision was not arbitrary and capricious. Unlike the therapy notes from the precise dates in fall 2010 that are now at issue, Burns was never involved in Plaintiff's care or treatment, and she appears to have only reviewed his records years later in preparation for applying for benefits. See Suppl. Sealed JA at 4895–96. As for Green, who asserts that she assisted Hayes with certain ADLs after 60 days, her statements carry somewhat les weight inasmuch as she doesn't distinguish Hayes's daily requirements at the outset from those at the 60-day mark. Id. at 4902. There is, moreover, at least the potential for personal prejudice or false memory coloring her statements. For these reasons and more, courts in this district have explained that, "[i]n weighing all the evidence, the [Board] [i]s entitled to give greater weight to contemporaneous medical records than after-the-fact statements submitted by the certifying nurse reviewer and [the plaintiff's] caregivers." Cloud v. United States, No.17-316, 2019 WL 1924363, at *7 (D.D.C. Apr. 30, 2019) (citations omitted).

To be sure, the Court is not saying that it disbelieves Green and Hayes, nor does it impute bad faith to either. In addition, it need not determine whether it necessarily would have reached the same outcome as the Board were it to review this case in the first instance. This is because "the function of this Court is not to serve as a super correction board that reweighs the evidence." Charette v. Walker, 996 F. Supp. 43, 50 (D.D.C. 1998). On the contrary, it is well "within the [Board]'s discretion to find[ ] some pieces of evidence more persuasive than others," as it did

13

here.  Cloud, 2019 WL 1924363, at *7 (alteration in original) (internal quotation marks and citation omitted).  Indeed, under the deferential standard applicable here, it suffices that the Board "considered the full record" and "took account of evidence that tended to cut against its finding" before making a determination that was "supported by substantial evidence."  Alaska Cmmc'ns Sys. Holdings, Inc. v. NLRB, 6 F.4th 1291, 1301 (D.C. Cir. 2021).

Similarly, Plaintiff's extensive reliance on Fail v. United States, No. 12-1761, 2013 WL 5418169 (D. Colo. Sept. 27, 2013), also misses its mark.  Aside from coming from a decade-old, unpublished decision out of the District of Colorado, the reasoning of that TSGLI case in fact cuts against Hayes.  Plaintiff is of course correct that Fail stated that the Army is not "free to disregard or give minimal deference to the certifying professional's opinions in all circumstances."  Id. at *7.  In Fail, however — a case in which Burns herself was also the certifying medical professional supporting the claimant — the Court upheld the relevant administrative determination because it was reasonable for the agency "not to simply defer to Ms. Burns' opinions, and instead, [to] review[ ] Mr. Fail's medical records itself to determine whether such records supported the claimed limitations."  Id. at *6.  In fact, Fail explained, "[N]othing in the TSGLI statute or the enabling regulations requires that the Army simply accept wholesale the medical provider's conclusions, so the Court cannot say that the Army's refusal to do so is 'contrary to law.'"  Id.  This is especially true when, as here, the medical provider's statement came "long after [the] actual injury and was apparently based only on [its] review of [the] medical records," as opposed to being the testimony of someone who "personally treated" the plaintiff.  Id. at *7.  Fail thus buttresses the Court's conclusion here: when the Board's own "review of [the] medical records . . . reasonably led to a conclusion that Ms. Burns' opinion may

14

have been somewhat overstated" and the underlying medical records do not demonstrate eligibility for benefits, the Board's decision should be upheld. Id.

In sum, the Court cannot say that the Board's determination was arbitrary and capricious.

## IV. Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion for Summary Judgment and grant Defendant's Cross-Motion. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 19, 2022